Good morning, Your Honor. I represent the appellant, Mr. Tray Morris. I'll try to reserve two minutes for rebuttal. Mr. Morris has alleged that he had a series of limitations because of injuries to his knees and to his feet that caused him serious pain in walking or prevented him from walking entirely. He asked for accommodations, including a wheelchair, and he was not provided them. Nonetheless, despite this being a pretty textbook Title II ADA claim, the district court dismissed his claim on the grounds that his request for a wheelchair was actually a medical malpractice claim. Well, let's assume the government doesn't really defend that. Not very much, Your Honor. So let's assume that's, just for purposes here, let's assume that's erroneous. Yes. But I'm not really seeing, your brief asked the court to infer that Morris was unable to access prison services because he couldn't walk, but isn't that essentially asking the I mean, for example, you know, he was given one, he was pro se, he was given one opportunity to amend, and, but, and, you know, we have, you know, we've got, we're a little more lax with pro ses, but then on the other hand, there's really nothing in there that, you know, Morris' statements in his amended complaint contained the complete set of facts in support of his ADA claim, he says, does that imply that he doesn't have anything additional? Because if you want leave to amend, you know, if there's no there there, then there's no there there. Yeah, absolutely, Judge Kalyanan, it's an important question. So I think two points as to that. The first just on the leave to amend. So he filed his pro se complaint, it was screened, the ADA claim was allowed to go forward, but he was asked to amend his Eighth Amendment claim. So his amended complaint that he submitted was identical on the ADA and was slightly different on the Eighth Amendment. And then it was dismissed with prejudice, without leave to amend, the amended complaint was. Well, can you tell me any specific services he might be able to allege he was denied because of his inability to walk? Yes, absolutely, Your Honor. So, and this goes to the second point, which is whether it's speculation. So I'll grant that this Court would be reasonable in seeing this as a pleading defect that perhaps warrants a vacating of the district court's ruling and a remand for amendment. But unlike outside the prison context, where, of course, you have to identify a public service, you know, I try to go to the library, I'm in a wheelchair, I try to go to the library, I try to go to a ballot site. Those are not — it's not mandatory to go to the library. It's not mandatory to go vote. Somebody who was incarcerated — He had a cane, apparently. Well, yes. Several years after his first injury, he had a cane. The reasonableness of an accommodation is not really a Rule 12 question, and defendants don't really contest that. So given his allegations that he was unable to walk at times or suffered severe pain while walking, which also would be a denial of meaningful access, he's in a supermaxed carceral facility where everything, as this Court has held, is essentially a service provided by a public entity. So visitation, phone calls, dining room, recreation, everything outside of his cell, when he alleges that he was unable to walk — So is he not getting to the showers? Is he not getting to lunch? Well, so, Your Honor, that's not — I mean, he hasn't died of malnutrition at this point, so I'm assuming he's eating. Well, yes, Your Honor. So it's not clear from the face of the complaint, and this is, of course, an incarcerated pro se prisoner. I think we can assume that he didn't go without food for three years. But the failure to allege a specific service, it is — I don't think it's speculation, Your Honor. I think it's — I think it's obvious that if he was able to walk — if he was unable to walk or if he suffered severe pain while walking — Okay. But if he's going to file an amended complaint that says it's obvious I can't do things because I can't walk, that's going to go. It's not going to — it's got to be more specific than that. So if that's what you're saying, all he has to say is, I can't walk, so I'm denied services. Well, Your Honor, I agree — That's speculative. I agree that he would be — again, I'm not sure that it's speculative. I don't think defendants even contest that if he was — that taking the allegations is true, he would not be denied services. They're saying that there's a pleading defect in the complaint because he didn't list them. Well, he didn't say I couldn't go to the shower, I couldn't go eat, I couldn't go — I mean, if he was in a supermax, I don't know, is he get out one hour a day? That's — He doesn't say I couldn't go out in the yard. He doesn't say any of those things. That's true. And we would submit that at most this is a pleading defect. It's not speculation. But the pleading defect, so what you're asking for is an opportunity to amend the complaint. Yes, Your Honor. Are you continuing to represent this prisoner after this appeal or not? So I currently only have a limited scope representation agreement to represent him on this appeal. He and I have discussed what it would — what a remand could look like, what I'd be able to help with, what not. We are hoping to find him representation, whether — I'm not barred in California, so I would need local counsel. So it's not something that I can guarantee. But, yes, we would like to find or represent Mr. Morris on remand. Thank you. So did you want to reserve for rebuttal, or did you have other things you want to say now? I — if Judge Collins doesn't have any questions, I'd be happy to reserve my time. Thank you very much, Your Honor. All right. Thanks. Good morning. May it please the Court. Good morning. My name is Mark Jackson, Deputy Attorney General with the California Department of Justice. I represent defendants appellees. So you didn't really defend that the court got it wrong saying that a wheelchair was a request for medical treatment not covered by the ADA. So do you concede the district court was wrong on that? We don't, Your Honor. We do address that, albeit very briefly, in the briefing. The court was correct in reaching that decision. It's supported by the Simmons case. That's still good law of this court. But we do focus on — Oh, but — but, you know, there's a difference between, say, a medical malpractice claim, which is focused on, you know, how I ended up in the disabled situation. In other words, you know, the course of treatment I have received historically has placed me into this situation. That's a medical malpractice claim. An ADA claim says, I'm in this situation. It doesn't matter how I got here. Here's what I need now in order to be able to access services in the situation that I'm in. This case seems to fall in the latter box and not in the former box. And so, you know, having the comment and quoting the comment that the ADA doesn't create a remedy for medical malpractice seems to not speak to the issue. It seems wrong, right? Tell me why I'm wrong in the distinction I'm drawing here. Well, Your Honor, the question is which way the plaintiffs wish to argue this. And there's a problem both with framing this as a medical malpractice or a failure to provide adequate medical care type case in which the Simmons holding would apply. The ADA does not create a separate remedy for that. But there is a part of the complaint and because it was an Eighth Amendment claim here as well that talks about how I got here. How I got to this situation where I'm having difficulty walking. But then there's a part of it that says I have difficulty walking and here's what I need to be able to access any services. And you know, he's not specific about it. But here's what I need given my situation to focus on that part and tell me why that's covered by Simmons. Well, Your Honor, if it is a request for a wheelchair to address a medical condition, that could be characterized as a request for a durable medical equipment and part of his medical care. But the bigger problem, Your Honor, is the concept of accommodation under the ADA and durable medical equipment. Those are mutually exclusive categories. So if you're one, you're not the other. There's no area of overlap. There could be overlap, Your Honor. But the real problem here is no matter which way plaintiff wants to argue this, there's still the question of whether the lack of a wheelchair, however it is characterized, actually led to Mr. Morris being denied any program, service, or activity. And as the Court has already alluded to, that's simply missing from this case. Well, but that would be if it's an ADA claim, apart from how he got in the chair, then if the Court was wrong on that, then he should be given a chance to go back and say what services I was denied. Because if the Court was looking through the lens of you're requesting a wheelchair is really all part of the medical care that you weren't given, that's a completely different cause of action than I need a wheelchair to access certain daily necessities. And so they aren't mutually exclusive, as you've indicated. There could be a Venn diagram intersection there. But if he really does have, if he was denied an opportunity to state what services he was denied under the ADA, what accommodations he needs, then he should be given leave to amend. Your Honor, he does not— But maybe he can't, maybe he doesn't have anything there. I don't know. I haven't, you know, if he had been represented, a lot of times I know that lawyers will say, if you give me an opportunity to amend my complaint, I'm going to say under the ADA, this is what I would have done had I had the, you know, this is what the services I was denied because a wheelchair could have cured that. Well, Your Honor, the Court already granted leave to amend. But not the ADA claim. That was the Eighth Amendment claim because the Court allowed the ADA claim to go forward. So the leave to amend was only to amend the Eighth Amendment. He had no reason to believe that the Court had criticized his ADA claim or had found it deficient. So he's never been advised by the Court that his ADA pleadings were inadequate. So why shouldn't he have that opportunity? Because, Your Honor, he's already had the opportunity because the ADA claim and the deliberate indifference claim were pled together and then broken apart in the amended complaint. And the defect in the complaint is not one of a stylistic problem or a failure to do it in a way that a lawyer might do, but rather the absence of facts. That's what's missing. And Mr. Morris was given. But he was not advised by the Court that he was missing facts with respect to his ADA claim and given an opportunity to amend. He was told that there were problems with his Eighth Amendment claim and given an opportunity to amend. So why shouldn't he just have the opportunity to amend the ADA claim now that he's on notice that it's deficient? I mean, opposing counsel says, you know, this is just a deficiency in pleading. And it doesn't feel like it would take very much for him to say, I can't get to the cafeteria. I can't get to my exercise area for my hour a day or whatever I'm being given. I can't get to the library because I don't have a wheelchair or there aren't adequate wheelchair ramps or something else that I need. Well, Your Honor is correct. It wouldn't take much. And yet Mr. Morris has not done it on appeal. Counsel has not proffered any facts that he was denied any service, program or activity. And in fact, the complaint, another way to look at the complaint is it's a detail of Mr. Morris's access to the one service which he describes in detail, and that's his medical services. And he goes to appointment after appointment after appointment. He even goes off-site for two appointments. And there's no indication whatsoever he was unable to get to the medical building, that he was late for his appointments because he couldn't walk there. There's none of that. Nor is there any allegation that he was unable to get his meals or education. I'm looking at his this is his amended complaint. I'm looking at I'm not sure that this is claim number two, probably paragraph 18. The plaintiff has also requested a wheelchair to be placed in a building with a wheelchair ramp. That's not exactly an Eighth Amendment claim. And that doesn't feel like that. It doesn't feel like that's a real surprise if we're just talking about notice pleading that he's saying I'm in a building that doesn't have a wheelchair ramp and I need a wheelchair and I can't get to where I need to go. I mean, it would be nice to have some more detail here. If the state would like some more detail, then we should give him an opportunity to amend the complaint. I'm not sure that that that looking at that, that that is that that is inadequate to state an ADA claim. Well, if there was some indication that because he didn't have a wheelchair, he couldn't get to, say, his meals or the education or vocational training or anything like that, that would be different. But there's no facts whatsoever. And the plaintiff is simply asking this court to write in those facts, not make an inference. I don't think he's asking us to write him in. I think he's asking us for an opportunity to amend when he's never been put on notice that this was inadequate to state a claim under the ADA. Well, Your Honor, he did have notice because first, this is raised in the briefing in the motion to dismiss Mr. Morris. He actually, in his opposition to the motion to dismiss, he writes out the elements for an ADA claim, including the need to plead of a denial of a program, service or activity. So he he knows this. And and yet there are no facts supporting that. So does he have a wheelchair now? Your Honor, it's not in the record. I'm not aware of him having a wheelchair. So he has a cane still, I guess. I don't know that for sure, Your Honor. But we know he from the record, we know he was supplied a cane and also a knee brace. So if if the court is inclined to make any inferences, which it need not do. But if it is so inclined, the inference would be that that was sufficient, that that was an accommodation. He was able, evidently, to get to his medical services. And there's no indication he was denied any. You don't think the district court said you don't have an Eighth Amendment claim, so you therefore don't have an ADA claim because really your request for a wheelchair is really all part of your Eighth Amendment claim. The court didn't say that? I don't think the court, the court, the district court did look at the ADA claim and the Eighth Amendment claim separately. And while the court was focused on this notion of medical malpractice, it did recognize the argument raised by defendants that the pleading did lack any facts showing denial of the service program or activity. And this court is able to affirm that order on any basis supported by the record. And clearly that is in the record. And so I see my time is up. Your Honor, I'm happy to answer any further questions. Otherwise, thank you very much. We ask the court affirm. There don't appear to be additional questions. Thank you. Thank you, Your Honors. We would just note that that defendant has quite explicitly asked for inferences to be made in his favor about the consequences of the knee brace, about the consequences of the cane, about him making it to his medical appointments on time. That's just obviously not the applicable Rule 12 standard, particularly with a pro se plaintiff where it needs to be read particularly liberally. I think I appreciate this court's questions. I think it's events to a clear understanding of the case. Are there any additional questions? There don't appear to be. Okay. Thank you very much, Your Honors. Thank you both. Thank you. All right. The next matter on calendar is Shelby Kittredge v. Kololo Kijokazi.
judges: BYBEE, CALLAHAN, COLLINS